UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLYDE BING,

                    Petitioner,

v.                                          Case No. 3:04-cv-944-32TEM

JAMES R. MCDONOUGH,[1]
et al.,

                    Respondents.

_____

**<u>ORDER</u>**[2]

**I. Status**

Petitioner Clyde Bing, an inmate of the Florida penal system
proceeding *pro se*, initiated this action by filing a Petition for
Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on
September 22, 2004.   On November 4, 2004, Petitioner filed an
Amended Petition (Doc. #5) and Memorandum in Support of the Amended
Petition (Doc. #6), challenging a 2002 state court (Columbia

_____

[1] James R. McDonough, the Secretary of the Florida Department
of Corrections, is substituted as the proper party Respondent for
James V. Crosby, Jr., pursuant to Rule 25(d)(1) of the Federal
Rules of Civil Procedure.

[2] Under the E-Government Act of 2002, this is a written
opinion and therefore is available electronically.  However, it has
been entered only to decide the matter addressed herein and is not
intended for official publication or to serve as precedent.

County, Florida) judgment of conviction for sale of cocaine, possession of cocaine and driving while license is suspended or revoked.  He raises the following two grounds: (1) ineffective assistance of trial counsel for failing to show him the State's evidence until "days before trial," for telling him the State "fixed the evidence (tape)" and for informing him that if he proceeded to trial, "the state could give [him] 75 years," and (2) the trial court erred by failing to conduct an inquiry into Petitioner's dissatisfaction and conflict with counsel or by failing to appoint new counsel, thus violating Petitioner's right to due process.

Respondents filed an Answer to Petition for Writ of Habeas Corpus (Doc. #14) (hereinafter Response).  They submitted exhibits in support of their Response.[3]  Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment.  See Court's Order to Show Cause and Notice to Petitioner (Doc. #11).  Petitioner has replied.  See Petitioner's Reply to Respondents' Response (Doc. #15); Petitioner's Amended Response to Respondents' Response (Doc. #17).  This case is now ripe for review.

---

[3] Respondents' exhibits will be hereinafter referred to as "Ex."

## II. Procedural History

On May 9, 2002, Petitioner Clyde Bing entered pleas of guilty to the following charges:  Case No. 2001-548-CF, two counts of sale of cocaine and two counts of possession of cocaine with the intent to sell; Case No. 2001-694-CF, one count of sale of cocaine and one count of possession of cocaine with the intent to sell; and, Case No. 2002-254-CF, one count of felony driving while the license is suspended or revoked as an habitual traffic offender.  Ex. A, Transcript of the Plea Proceeding (hereinafter Plea Tr.) at 75-76. Petitioner was sentenced to a term of incarceration for eight years and six months on each count for sale of cocaine and possession of cocaine with the intent to sell and to a term of incarceration for five years for the felony driving while the license is suspended or revoked, all sentences to run concurrently.  Id. at 81; see http://www.dc.state.fl.us/ActiveInmates (website for the Florida Department of Corrections).  The State had made a ten-year plea offer and therefore objected to the court's sentencing Petitioner to eight years and six months.  Plea Tr. at 58, 74, 75, 76. Petitioner did not file a direct appeal.  Amended Petition at 3; Response at 3.

On or about September 12, 2002, Petitioner filed a Fla. R. Crim. P. 3.800 motion to correct an illegal sentence, which was partially granted on March 19, 2003.  Response at 3 n.1; Ex. A at 3; Ex. A, Docket Sheet for the State Trial Court (hereinafter

3

Docket Sheet), entries September 12, 2002, and March 19, 2003. As a result of the partial granting of the motion, the trial court amended the judgment and sentence by deleting the reference to Petitioner Bing as an habitual felony offender for possession of cocaine.[4]  Ex. A, Docket Sheet, entry March 19, 2003.

On or about June 18, 2003, Petitioner Bing filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, in which he raised the following grounds: (1) his pleas of guilty were involuntarily entered since they were based on counsel's misadvice that he would not be sentenced as an habitual felony offender; (2) ineffective assistance of trial counsel and denial of a fair sentencing proceeding due to counsel's failure to object to the State's failure to properly prepare and present a Criminal Punishment Code score sheet; (3) the trial court erred in conducting the plea and sentencing hearing without requiring the State to prepare a Criminal Punishment Code score sheet; (4) ineffective assistance of trial counsel and denial of a fair

---

[4] Petitioner was therefore sentenced as follows: Case No. 2001-548-CF, two counts of sale of cocaine (8.5 years as an habitual felony offender) and two counts of possession of cocaine with the intent to sell (8.5 years with no habitual felony offender designation); Case No. 2001-694-CF, one count of sale of cocaine (8.5 years as an habitual felony offender, to run concurrently with Case No. 2001-548-CF) and one count of possession of cocaine with the intent to sell (8.5 years with no habitual felony offender designation, to run concurrently with Case No. 2001-548-CF); and, Case No. 2002-254-CF, one count of felony driving while the license is suspended or revoked as an habitual traffic offender (five years as an habitual felony offender, to run concurrently with Case Nos. 2001-548-CF and 2001-694-CF).  Ex. A at 49-50.

sentencing proceeding due to counsel's (a) failure to investigate and/or object to Petitioner's predicate felony offenses which qualified him as an habitual felony offender, and (b) failure to require the State to conduct a separate hearing to determine whether or not he qualified as an habitual felony offender; (5) the trial court denied him a fair sentencing hearing by (a) sentencing him absent proof, evidence or any procedural safeguards pursuant to the habitual felony offender statute, and (b) failing to conduct a separate hearing to determine whether he qualified as an habitual felony offender, and; (6) ineffective assistance of trial counsel for failure to properly prepare for trial in that he did not thoroughly investigate the facts and circumstances of the case, the strength of the State's case and viable defenses. Ex. A at 1-46. The court ordered the State to file a response. <u>Id</u>. at 47. On November 17, 2003, the State filed a response. <u>Id</u>. at 48-83. Petitioner filed a reply. <u>Id</u>. at 84-98. On January 20, 2004, the trial court denied the Rule 3.850 motion. <u>Id</u>. at 99-101. On May 16, 2004, the trial court denied Petitioner's Motion for Rehearing. <u>Id</u>. at 106-15, 116.

On appeal, Petitioner filed an Initial Brief. Ex. B. The State filed a Notice That [the] State Will Not File [an] Answer Brief Pursuant to Florida Rule of Appellate Procedure 9.141(b). Ex. C. On August 23, 2004, the appellate court per curiam affirmed without issuing a written opinion. <u>Bing v. State</u>, 881 So.2d 1116

5

(Fla. 1st DCA 2004); Ex. D.   The mandate was issued on October 8, 2004.   Ex. D.

Petitioner's Petition (signed on September 20, 2004, and filed in this Court on September 22, 2004) is timely filed within the one-year period of limitations.   See 28 U.S.C. § 2244(d); Response at 2.

### III. Evidentiary Hearing

A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief.   Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).   Here, the pertinent facts of the case are fully developed in the record before the Court.   The Court can "adequately assess [Petitioner's] claim[s] without further factual development."   Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).   Therefore, an evidentiary hearing will not be conducted by this Court.

### IV. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.   That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense."   Yarborough v.

<u>Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The

Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's
> performance fell below an "objective standard
> of reasonableness" and that the lawyer's
> deficient performance prejudiced the
> petitioner.  <u>See</u> <u>Strickland v. Washington</u>, 466
> U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674
> (1984).  Establishing these two elements is
> not easy:  "the cases in which habeas
> petitioners can properly prevail on the ground
> of ineffective assistance of counsel are few
> and far between." <u>Waters v. Thomas</u>, 46 F.3d
> 1506, 1511 (11th Cir. 1995) (en banc) (quoting
> <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir.
> 1994)).

> For assessing a lawyer's performance,
> <u>Chandler v. United States</u>, 218 F.3d 1305 (11th
> Cir. 2000) (en banc) <u>cert</u>. <u>denied</u>, 531 U.S.
> 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001),
> sets out the basic law: "Courts must indulge
> the strong presumption that counsel's
> performance was reasonable and that counsel
> made all significant decisions in the exercise
> of reasonable professional judgment." <u>Id</u>. at
> 1314 (internal marks omitted). . . . Our role
> in reviewing an ineffective assistance claim
> is not to "grade" a lawyer's performance;
> instead, we determine only whether a lawyer's
> performance was within "the wide range of
> professionally competent assistance." <u>See</u>
> <u>Strickland</u>, 104 S.Ct. at 2066.

> The inquiry into whether a lawyer has
> provided effective assistance is an objective
> one: a petitioner must establish that no
> objectively competent lawyer would have taken
> the action that his lawyer did take." <u>See</u>
> <u>Chandler</u>, 218 F.3d at 1315. . . .

> A petitioner's burden of establishing
> that his lawyer's deficient performance
> prejudiced his case is also high. "It is not
> enough for the [petitioner] to show that the
> errors had some conceivable effect on the

7

> outcome of the proceeding. Virtually every
> act or omission of counsel would meet that
> test." <u>Strickland</u>, 104 S.Ct. at 2067.
> Instead, a petitioner must establish that a
> reasonable probability exists that the outcome
> of the case would have been different if his
> lawyer had given adequate assistance. <u>See id</u>.
> at 2068.

<u>Van Poyck v. Florida Dep't of Corrections</u>, 290 F.3d 1318, 1322-23

(11th Cir. 2002) (per curiam) (footnotes omitted), <u>cert</u>. <u>denied</u>,

537 U.S. 812 (2002), 537 U.S. 1105 (2003).

In sum, "[w]ithout proof of both deficient performance and

prejudice to the defense, . . . it could not be said that the

sentence or conviction 'resulted from a breakdown in the adversary

process that rendered the result of the proceeding unreliable,' and

the sentence or conviction should stand." <u>Bell v. Cone</u>, 535 U.S.

685, 695 (2002) (internal citation omitted) (quoting <u>Strickland v.

Washington</u>, 466 U.S. 668, 687 (1984)).

In <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985) (footnote

omitted), the Court held:

> that the two-part <u>Strickland v. Washington</u>
> test applies to challenges to guilty pleas
> based on ineffective assistance of counsel.
> In the context of guilty pleas, the first half
> of the <u>Strickland v. Washington</u> test is
> nothing more than a restatement of the
> standard of attorney competence already set
> forth in <u>Tollett v. Henderson</u>, <u>supra</u>, and
> <u>McMann v. Richardson</u>, <u>supra</u>. The second, or
> "prejudice," requirement, on the other hand,
> focuses on whether counsel's constitutionally
> ineffective performance affected the outcome
> of the plea process. In other words, in order
> to satisfy the "prejudice" requirement, the
> defendant must show that there is a reasonable

8

probability that, but for counsel's errors, he
would not have pleaded guilty and would have
insisted on going to trial.

Ineffective assistance of counsel may also require that a plea
be set aside on the ground that it was involuntary because
voluntariness implicates not only threats and inducements but also
ignorance and incomprehension.  See Hill v. Lockhart, 474 U.S. at
56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970))
(noting that the "longstanding test for determining the validity of
a guilty plea is 'whether the plea represents a voluntary and
intelligent choice among the alternative courses of action open to
the defendant.'").

> "A guilty plea is open to attack on the ground
> that counsel did not provide the defendant
> with 'reasonably competent advice.'"  Cuyler
> v. Sullivan, 446 U.S. 335, 344, 100 S.Ct.
> 1708, 1716, 64 L.Ed.2d 333 (1980) (quoting
> McMann v. Richardson, 397 U.S. 759, 770, 90
> S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)); see
> Hill v. Lockhart, 474 U.S. 52, 58-59, 106
> S.Ct. 366, 370-71, 88 L.Ed.2d 203 (1985)
> (holding that, in the plea context, a habeas
> petitioner establishes ineffective assistance
> of counsel by demonstrating that counsel's
> advice and performance fell below an objective
> standard of reasonableness, based upon which
> he pled guilty).  For a guilty plea to
> "represent an informed choice" so that it is
> constitutionally "knowing and voluntary," the
> "[c]ounsel must be familiar with the facts and
> the law in order to advise the defendant of
> the options available."  Scott v. Wainwright,
> 698 F.2d 427, 429 (11th Cir. 1983).  "The
> failure of an attorney to inform his client of
> the relevant law clearly satisfies the first
> prong of the Strickland analysis . . . as such
> an omission cannot be said to fall within 'the
> wide range of professionally competent

> assistance' demanded by the Sixth Amendment."
> <u>Hill</u>, 474 U.S. at 62, 106 S.Ct. at 372 (White,
> J., concurring) (quoting <u>Strickland v.
> Washington</u>, 466 U.S. 668, 690, 104 S.Ct. 2052,
> 2066, 80 L.Ed.2d 674 (1984)).

<u>Finch v. Vaughn</u>, 67 F.3d 909, 916 (11th Cir. 1995).

A federal habeas court reviews a state court guilty plea only for compliance with constitutional protections.

> This court has concluded that "[a] reviewing
> federal court may set aside a state court
> guilty plea only for failure to satisfy due
> process: If a defendant understands the
> charges against him, understands the
> consequences of a guilty plea, and voluntarily
> chooses to plead guilty, without being coerced
> to do so, the guilty plea . . . will be upheld
> on federal review." <u>Stano v. Dugger</u>, 921 F.2d
> 1125, 1141 (11th Cir.) (en banc), <u>cert</u>.
> <u>denied</u>, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed.
> 2d 85 (1991).

<u>Jones v. White</u>, 992 F.2d 1548, 1556-57 (11th Cir.), <u>cert</u>. <u>denied</u>, 510 U.S. 967 (1993).

Thus, in order for a guilty plea to be constitutionally valid, it must be made knowingly, intelligently, and voluntarily. <u>Pardue v. Burton</u>, 26 F.3d 1093, 1096 (11th Cir. 1994).

> A guilty plea is an admission of criminal
> conduct as well as the waiver of the right to
> trial. <u>Brady v. United States</u>, 397 U.S. 742,
> 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747
> (1970). "Waivers of constitutional rights not
> only must be voluntary but must be knowing,
> intelligent acts done with sufficient
> awareness of the relevant circumstances and
> likely consequences." <u>Id</u>.; <u>United States v.
> Fairchild</u>, 803 F.2d 1121, 1123 (11th Cir.
> 1986) (per curiam).

Reviewing federal courts "may set aside a state court guilty plea only for failure to satisfy due process." <u>Stano v. Dugger</u>, 921 F.2d 1125, 1141 (11th Cir.) (en banc), <u>cert</u>. <u>denied</u>, 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991). "[W]hen it develops that the defendant was not fairly apprised of its consequences" or when "the defendant pleads guilty on a false premise" in the prosecution's plea agreement, a guilty plea violates the Due Process Clause. <u>Mabry v. Johnson</u>, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). The Court has instructed that the "essence" of any promises that induce a guilty plea "must in some way be made known" to the defendant. <u>Santobello v. New York</u>, 404 U.S. 257, 261-62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

For a guilty plea to be entered knowingly and intelligently, "'the defendant must have not only the mental competence to understand and appreciate the nature and <u>consequences</u> of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the <u>legal</u> <u>options</u> <u>and</u> <u>alternative</u> <u>that</u> <u>are</u> <u>available</u>.'" <u>Stano</u>, 921 F.2d at 1142 (citation omitted) (emphasis added). Voluntariness implicates "[i]gnorance, incomprehension," and "inducements" as well as "coercion, terror" and "threats." <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); <u>Stano</u>, 921 F.2d at 1141. Thus, "[i]gnorance of the consequences of a guilty plea may require its rejection." <u>Stano</u>, 921 F.2d at 1141 (citing <u>Boykin</u>, 395 U.S. at 243-44, 89 S.Ct. at 1712).

<u>Finch</u>, 67 F.3d at 914-15.

## V. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner Bing claims that his trial counsel was ineffective.

Specifically, Petitioner alleges:

> [M]y court appointed counsel did not show me
> the evidence the State was to use until days
> before trial.  He told me the State fixed the
> evidence (tape).  I complained to the court I
> wanted  new  counsel,  and  that  I  wasn't
> satisfied with my counsel, also that he has
> not done anything on my behalf.  He told me if
> I whent [sic] to trial the State could give me
> 75 years which scared me[.]   I repeatedly
> ask[ed] for new counsel.

Amended Petition at 5.  The parties state that Petitioner raised

this ineffectiveness claim in his Rule 3.850 motion and in his

appeal of the denial of the Rule 3.850 motion.  <u>Id</u>. at 5; Response

at 2, 6-7.  In denying Petitioner's Rule 3.850 motion, the trial

court stated in pertinent part:

> Defendant  asserts  that  the  guilty  pleas
> entered by him were involuntary as they failed
> to meet the essential requirement of having
> been knowingly and intelligently entered.
>
>     As  shown  in  attachments  of  court
> transcripts  provided  with  the  State's
> Response, Defendant's contention is without
> merit  and  void  of  the  facts  and  evidence
> presented at the time of plea and sentencing.
> The transcript of the plea colloquy conducted
> by the Court on May 9, 2002[,] clearly refutes
> defendant's assertion that such was not made
> freely, knowingly and voluntarily.  Defendant
> was fully appraised, in court, of the facts
> and  evidence  which  existed  in  the  instant
> cases.  Further, Defendant was advised of the
> sentences  he  could  receive  if  he  was,
> convicted of said offenses and sentenced as a

12

Habitual Felony Offender. Prior to Defendant's plea being accepted, the Court conducted a full and complete inquiry into the voluntariness of the plea.

The record clearly refutes Defendant's assertion that his counsel repeatedly told him that he would not be sentenced as a Habitual Felony Offender if he accepted the plea. Defendant was fully aware the State would be seeking a sentence as a Habitual Felony Offender. Defendant further stated on the record that he understood he qualified to be sentenced as a Habitual Felony Offender.

. . . .

Defendant qualified for sentencing as a Habitual Felony Offender. . . .

The Court specifically told Defendant it would agree to a sentence of 8.5 years in the Department of Corrections as a Habitual Felony Offender. The Court was agreeing to such over the objection of the State. Never did the Court advise Defendant it would consider or sentence him to any lower than the 8.5 year term.

. . . .

Defendant agreed he qualified for sentencing as a Habitual Felony Offender based on the judgment and sentences which were provided to the Court and his counsel. Defendant was provided full and complete discovery in each case, to include copies of his certified prior convictions. It was established that Defendant met the qualifications to be designated as a Habitual Felony Offender; specifically Defendant had previously been convicted of two or more felony offenses and the felonies for which Defendant was to be sentenced were committed within 5 years of Defendant's release from a prison sentence, probation or community control sentence. Overall, the record is clear that Defendant met the qualifications for sentencing as a Habitual

13

Felony Offender, and a separate hearing was
not required due to Defendant agreeing to
such.

[P]rior to Defendant being sentenced as a
Habitual Felony Offender, he was provided
notice by the State that such sentencing would
be sought.  Defendant was provided copies of
the felony judgment and sentences the State
intended to rely upon to establish he
qualified as a Habitual Felony Offender.
Those same judgement and sentences were
provided to the Court at the time of
sentencing.  The Court reviewed such and
advised Defendant that he met the
qualifications to be sentenced as a Habitual
Felony Offender.  Defendant, on the record,
under oath, agreed that he did meet such
qualifications to be designated as such.  The
Court consequently sentenced Defendant to a
prison term as a Habitual Felony Offender.
Such designation did not require a separate
hearing based on the foregoing.

. . . .

The court file clearly establishes that
defense counsel obtained the discovery in all
cases pending against Defendant and conducted
further discovery in the form of depositions.
Further, defense counsel was prepared to
proceed to trial if Defendant rejected the
sentence/offer made by the Court.  Defendant,
prior to being sentenced, specifically advised
the Court, under oath, that he was satisfied
with his defense counsel (transcript page 22,
line 19-21). In addition, Defendant understood
that he was giving up his right to have
witnesses subpoenaed on his behalf, and the
right to a trial by judge or jury (transcript
page 24).

Defendant failed to demonstrate that
counsel's performance was deficient and that
there is a reasonable probability that the
outcome of the proceedings would have been
different.

14

Ex. A at 99-101.

The following facts are relevant for resolution of this claim. On Thursday, May 9, 2002, a plea and sentencing hearing was conducted.   Ex. A, Transcript of the Plea and Sentencing Hearing (hereinafter Plea Tr.) at 56-83.   Mr. Stephen M. Witt represented Petitioner Bing at the plea hearing.   At the beginning of the plea hearing, Mr. Witt stated:

> Your Honor, trial is set for jury selection for Monday.   Me and Mr. Bing have had discussions about the case and, in fact, it was at pretrial where you inquired about, you know, did he want to go to trial and the plea offer at that time was ten years with the State asking for thirty at trial.
>
> Me and Ms. Johnson [the prosecutor] have had several discussions about the trial and all.   And something she mentioned to me the other day about a videotape, I didn't recall it from looking at mine.   So I went back and looked at my videotape and it didn't show the same thing.   So I got in touch with her and she gave me a new tape with all three transactions on it.   So I went to the jail yesterday, showed that to Mr. Bing and had discussions about a plea offer.
>
> At that time he says, Well, why are you just showing . . . it [to] me?  I said, Well, my understanding [was] this was the only tape there was.   And the State, I guess, thought what they gave me was all the transactions on that tape.   And then at that time he told me he wanted another attorney.   And so I thought we would have this meeting today to see if we can resolve where we are at on the case so we that [sic] can get ready for trial on Monday. So that's where we are at.

Id. at 58-59.  Petitioner agreed with defense counsel as to the status of the case.  Id. at 59.

Petitioner Bing, under oath, explained his frustration to the trial judge, stating:

> Your Honor, sir, I been coming up for nine months.  I been making appointments with him, asking him to bring my deposition, everything to me.  Okay.  He been showing me this tape for the whole time that I been coming to court and this is the tape that he been showing me.  Okay.
>
> He come yesterday and say that the State -- there's something wrong with the tape, that the tape -- the State fixed it.  How can they fix it when we about ready for a jury?  He say the State just fixed the tape.  He wouldn't even tell me that whole time, sir.
>
> What I'm saying, I done been in front of pleas, I done pleaded out to the things I done in the past.  But, you know, this here -- this is my life now. . . .
>
> This is my life they want me to sign away for. And I ain't got a lawyer that explaining nothing to me.  I ain't got no kind of papers. I should have papers right here in front of me right now that I should be going over, you know.  I ain't seen nothing.

Id. at 59-60.  The trial judge asked Petitioner:  "What do you want your lawyer to tell you that he hasn't told you?"  Id. at 60. Petitioner responded:

> He has to explain things of what's going on and give me more than what, you know --

Id. at 60-61.

The prosecutor gave a brief synopsis of the State's evidence to assist in Petitioner's understanding of the case and to set forth the factual basis for the pleas of guilty on the three controlled buys.  <u>Id</u>. at 61.

> First of all, we had a buy that occurred January 16th, confidential informant Billie Johnson, who has known him for numerous years, identified him on sight.  She went to B & B, paged him, had a phone call with him and agreed to meet at Billy's Bar.  Go to Billy's Bar and there is Mr. Bing outside there.  A green truck pulls up, he freaks out and won't do the buy.  At that time tells her to go to Winn Dixie.  She goes to Winn Dixie and comes back and goes into the bar and purchases $60 of crack cocaine from him.  The crack cocaine will be introduced into evidence along with the audio that clearly depicts what went on in that incident.
>
> At that same time there is an undercover officer at the back of the van who will identify Mr. Bing, Investigator Ray Metrick, with the task force, was there at the bar at the time.  That is the first buy.
>
> January 19th, the second buy, occurs again at Billy's Bar right on the side of the bar.  Again, Billie Johnson, the confidential informant, goes up there.  This time it's videoed and you can see Mr. Bing on the video again selling to our confident[ial] informant $60 worth of crack cocaine.
>
> On this same day one of our task force officers drives by and observes Mr. Bing having contact with our confidential informant.  Okay.  That evidence will be introduced.  That video will be introduced.
>
> Final buy, April 30th.  Again, Billie Johnson purchases crack cocaine from Mr. Bing. This time it occurs at Billy's Bar, but off to the side on the grass where Mr. Bing is there

17

with some of his friends in a truck.  She goes
up there to purchase the crack cocaine, makes
contact with him.  He gets the crack cocaine
out of a truck, takes it up to her, sells it.
She hands him $40 and this time it's $40 worth
of crack cocaine.

Again, you will see him on the video very
clear as day selling her this crack cocaine.
And then she goes back and meets with the task
force and turns the drugs over.  These were
all controlled situations.  She's searched
before and she's searched after.  She's
videoed and this is audioed.

Then the second thing they do is they get
a warrant for Mr. Bing's arrest.  Task force
meets with him.  John Blanchard will testify
that Mr. Bing confessed to selling it to our
confidential informant.  That will be
introduced in front of the jury.

If the jury believes one sale occurred, I
think I have a right to ask for thirty years
because he is a habitual felony offender.  So
if they come back on one count I'm asking for
thirty years.  I have offered him ten.

. . . .

I said I have already prepped my
witnesses. Our confidential informant, Billie
Johnson, is ready.  And Mr. Bing is fully
aware she's the CI . . . .

. . . .

John Blanchard will be there.
Investigator Ray Metrick will be there.
Investigator Ed Siefert will be here at trial,
Russell Cherum and Katina Werner.  I will have
probably six witnesses that will substantiate
how the buys occur.  The audios, the videos
will be played and the drugs will be
introduced along with our lab technician.
This is not one piece of crack cocaine.  This
is several in a bag that you will see for each
buy.  I mean, they are significant pieces of

18

> crack cocaine that will be clearly visible to
> the jury.

Id. at 61-63, 64.

The trial judge asked the prosecutor what sentence she would request if the jury returned with guilty verdicts on all three buys. Id. at 63. The prosecutor responded that she would ask for a sentence of seventy-five years' incarceration. Id.

The trial judge inquired: "Now we could have resolved it today for ten [years] and he is facing thirty to seventy-five?" Id. The prosecutor affirmed the trial judge's understanding of the State's ten-year plea offer to Petitioner. Id. The trial judge concluded: "Sounds like you got a good lawyer to me." Id. Defense counsel noted that he had explained the State's evidence to Petitioner. Id. Both the prosecutor and defense counsel agreed that Petitioner was fully aware that Billie Johnson is the confidential informant. Id. at 64. Defense counsel also stated that he had played the tape of Billie Johnson's deposition to Petitioner so he could hear her testimony. Id.

The trial judge then inquired as to whether Petitioner was interested in the State's ten-year plea offer or whether he preferred "to risk the thirty to seventy-five" years' imprisonment if he proceeded to trial and the jury found him guilty. Id. at 64-65. When Petitioner requested another lawyer, the trial judge expressed concern about a possible delay and thus responded:

> Well, I don't see any reason to change
> lawyers, wait another nine months in jail.
>
> Ask me any question that your lawyer
> can't answer and I'll see.

Id. at 65.

Since Petitioner was concerned about his copies of pertinent

documents relevant to the case, Mr. Witt agreed to deliver them to

the jail. Id. Petitioner then affirmed that he wanted to proceed

to trial. Id. The following colloquy then ensued:

> THE COURT:  Have you ever been to prison
> before?
>
> THE DEFENDANT: Yes, sir.
>
> About what she [the prosecutor] was
> talking about threatening, threatening who?
> Threatening a witness?[5]
>
> THE COURT:  I don't think that matters.
> It's just a question of whether the jury
> believes any of the three buys or all of them.
> That's all this is about, whether somebody
> sold crack cocaine and if the jury believes
> it.
>
> THE DEFENDANT: But like I was saying,
> Your Honor, sir, I asked him to bring
> everything forth and he say that was it.  And
> what scared me --
>
> MR. WITT: Now you know today what is it
> [sic].  She just told you what is going on.
> You knew that yesterday.  And you have known
> about everything other than the two video

---

[5] Petitioner was referring to the prosecutor's previous
comment:  "And Mr. Bing is fully aware she's the CI [confidential
informant] because he's, in his own failed way, made little
intimidating threats and made comments, tell Billie I said, [h]i,
so he knows who she is."  Plea Tr. at 64.

tapes prior to yesterday and we have discussed
it.  I went to the jail last Thursday.  I went
to the jail Monday and I went to the jail
Wednesday.  So I have been three times in the
last week.

THE DEFENDANT: But you just now bringing
it yesterday.

THE COURT: All right.  Now listen
carefully.  Is there anything you don't
understand?

THE DEFENDANT: No.

THE COURT: Name something you don't
understand.

(No response.)

. . . .

THE COURT: Anything you don't understand
now is your chance to ask me.  We'll have a
jury here Monday.

Id. at 66-68.

Defense counsel reminded Petitioner that the State would not

make any more plea offers.  Id. at 68.  When the trial judge asked

Petitioner if he wanted to consult with his attorney, Petitioner

stated: "You couldn't recommend me another lawyer?"  Id.  The trial

judge responded:

Mr. Witt is prepared.  He is your second
lawyer and he is prepared and you can't tell
me a single question he can't answer.  No,
sir, there won't be another lawyer.

. . . .

Right.  There won't be another lawyer
unless you can give me a question that he
hasn't answered or can't answer.

21

Id. Petitioner did not respond. Id.

The trial judge gave Petitioner an opportunity to discuss his options with Mr. Witt, and a recess was taken. Id. at 68-69. The prosecutor then announced that the State "would be willing to wrap up the habitual traffic offender offense with this plea so that all cases are resolved." Id. at 69. She further explained that, otherwise, if Petitioner proceeded to trial on the habitual traffic offender offense, the State would seek a consecutive prison sentence. Id. She concluded that she was willing to "wrap up all three cases." Id.

In open court, Mr. Witt explained the State's offer to Petitioner and conferred with Petitioner off the record. Id. When Mr. Witt informed the trial judge that Petitioner wished to speak with his family about the State's offer, a brief recess was taken. Id. Mr. Witt later announced that Petitioner's family would hire a lawyer in the near future. Id. The prosecutor objected to any continuance, stating that she was prepared for trial. Id. at 69-70. The trial judge concluded:

> Mr. Bing, we are going to try your case with this lawyer. And if you hire another one, that's good too. But we will to go [sic] trial on Monday with that lawyer. And you're welcome to hire another one to assist him or run your case.
>
> Mr. Witt, you be here. We're going to selected [sic] a jury.

Id. at 70.

Mr. Witt reminded Petitioner that there would not be any more plea offers made by the State, and the trial judge again informed Petitioner that the State would request a sentence of thirty to seventy-five years' incarceration if he proceeded to trial and the jury found him guilty.  Id.  The prosecutor asserted that she would only ask for a sentence of thirty years if he is convicted on one count, but noted:  "I am confident we will convict him on all six [counts]."  Id.

The trial judge explained Petitioner's options:

> I will simplify it for you.  The State has offered a plea agreement for ten years. You face thirty to seventy-five.  In other words, a life sentence if you're convicted by a jury.  The State thinks that they are going to be able to argue, because of your past record and the number of crimes, that they think they are going to be able to convince me to sentence you somewhere between thirty and seventy-five years.  That will be up to me to decide then.
>
> What they are telling me now is that if you plead today it's ten years.  If the State walks out the door then there is no plea agreement on Monday for ten years.  It's jury selection, State is asking thirty to seventy-five if you are convicted of all or any of the six counts.  You understand that?

Id. at 70-71.  Petitioner affirmed that he understood the trial judge's explanation.  Id. at 71.  Petitioner again stated that he was not satisfied with his lawyer.  Id.  The trial judge responded:

> Well, you're probably not satisfied with the situation, but you got a good lawyer.  You can't tell me anything that's wrong with him. I haven't heard anything yet that would

23

> convince a reasonable person that you didn't
> have a good lawyer.

Id. at 71-72.  The following colloquy ensued:

> [THE COURT]: Do you have anything you can
> say that you don't like about your lawyer?
>
> THE DEFENDANT: He ain't explaining things
> like --
>
> THE COURT: What is it you want -- what do
> you want explained?  He has explained it to me
> and I have heard him explain it to you in the
> courtroom.  Now what question do you have that
> he hasn't answered?
>
> THE DEFENDANT: About the plea and the
> tapes.
>
> THE COURT: All right.  What do you want
> to know about the plea?
>
> THE DEFENDANT: Why -- why -- why the
> State won't give me a reasonable plea?
>
> THE COURT: What is a reasonable plea?
>
> THE DEFENDANT: Ten years?
>
> THE COURT: What is a reasonable plea?
>
> THE DEFENDANT: Five in, five out.
>
> THE COURT: Could I force the State to
> take eight or nine?
>
> [THE PROSECUTOR]: Judge, I think we've
> been more than reasonable given the number of
> counts against Mr. Bing and the fact that
> while he's out on bond he commits another
> third degree felony that I am willing to wrap
> up into this case, which I could technically
> take that to trial and get consecutive.
>
> You know, this is a situation where he is
> actively dealing these drugs down in Ft.
> White.  Three buys occurring with a period of

24

four months, all at one location, which is a public location, and it's not small amounts of crack cocaine.  So I think our offer is more than reasonable.

The last time he was in prison I think he did three and a half -- was sentenced to three and a half years.  We are going up from there. He is a habitual felony offender.

If he pleads straight up to you, Judge, I have no control over what you do.  I can tell him that if he pleads straight up I will be asking for more than the ten.

I will also tell him that yesterday when Mr. Witt called me to tell me that Mr. Bing wanted to come into Court, you know, I was not inclined at that time to even keep this plea on the table, but Mr. Witt encouraged me to at least keep this plea on the table and not shut it out because I had a plea on the last court date.  But he convinced me to at least give his client --

MR. WITT: Because of the tape she was kind enough to do that.

THE COURT: Mr. Bing, here's what I'll say: State has offered ten.  I'll go with eight and a half if he pleads today, over the State's objection, and including the other case, wrap everything up for eight and a half, over the State's objection, if we can do a plea today.

If we don't -- if we can save that expense to the taxpayers of bringing in a jury and a two-day trial.  If not, the State is revoking it.  I think that's about as fair as it's ever going to get.

MR. WITT: I would highly recommend to my client to take eight and a half right now.

THE COURT: But that's up to him.

25

_Id_. at 72-74.   The trial judge again gave Petitioner the opportunity to consult Mr. Witt.   _Id_. at 74.   A recess was taken, and the court later resumed the proceeding.   _Id_. at 74-75.

The trial judge reminded Petitioner of his options:

> Mr. Bing, you have heard the State's offered you a plea of ten.   The Court said -- you negotiated with the Court and asked me to take less than ten.   The Court has assured you of eight and a half.

_Id_. at 75.   Affirming his understanding of his options, Petitioner agreed to accept the court's offer of eight and a half years.   _Id_.

Thus, Petitioner entered pleas of guilty in all three cases: Case No. 2001-548-CF, two counts of sale of cocaine (second degree felonies) and two counts of possession of cocaine with the intent to sell (second degree felonies); Case No. 2001-694-CF, one count of sale of cocaine (a second degree felony) and one count of possession of cocaine with the intent to sell (a second degree felony); and, Case No. 2002-254-CF, one count of felony driving while the license is suspended or revoked as an habitual traffic offender (a third degree felony).   _Id_. at 75-76.   The prosecutor again announced her objection to an eight and a half year sentence. _Id_. at 76.   The prosecutor introduced to the court all certified copies of Petitioner's prior judgments and sentences and requested that Petitioner be sentenced as an habitual felony offender.   _Id_. at 76-77.   She noted that the judgments and sentences had been disclosed to defense counsel through discovery.   _Id_. at 77.

Defense counsel agreed and then stipulated to the factual basis for the pleas based on the taking of depositions, listening to the audiotapes and watching the videotapes.  _Id_.

The trial judge reviewed the judgments and sentences and concluded that Petitioner qualified as an habitual felony offender. _Id_. Petitioner affirmed that he understood that he qualified. _Id_. Further, Petitioner did not feel forced or threatened in any way to enter the pleas of guilty. _Id_.  He acknowledged that he was satisfied with Mr. Witt, as his lawyer. _Id_.  Petitioner agreed that he had been to court five or ten times, had served time in prison and was familiar with the criminal justice system. _Id_. at 78.  Petitioner affirmed that it was fair to conclude that he was alert and intelligent. _Id_. at 79.

Petitioner understood that, by entering the pleas of guilty, he was giving up his right to a trial by jury or trial by judge. _Id_.  Further, he confirmed that he was giving up his right to have witnesses subpoenaed and brought to testify for the defense on his behalf, his right to waive the right to remain silent and testify on his own behalf and the right to have the State prove his guilt beyond a reasonable doubt.  _Id_.

The trial judge accepted his pleas of guilty as given freely, voluntarily, knowingly and intelligently.  _Id_. at 80.  The State requested that Petitioner be sentenced as an habitual felony offender.  _Id_.  The trial judge adjudicated Petitioner guilty on

all three cases as an habitual felony offender and sentenced him to a term of incarceration for eight and a half years on each count for sale of cocaine and possession of cocaine with the intent to sell and to a term of incarceration for five years for the felony driving while the license is suspended or revoked, all sentences to run concurrently.[6]  Id. at 81.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.[7]   The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'"  Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

---

[6] The trial court amended the judgment and sentence by deleting the reference to Petitioner Bing as an habitual felony offender for possession of cocaine.  Ex. A, Docket Sheet, entry March 19, 2003.

[7] Mr. Stephen Michael Witt was admitted to the Florida Bar on May 31, 1977.  See http://www.floridabar.org (website for the Florida Bar).  Therefore, at the time he was appointed to Petitioner's case on December 28, 2001, he had been an attorney admitted to the Florida Bar for over twenty-four years.  Ex. A, Docket Sheet, entry December 28, 2001.

Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient. Quite to the contrary, Mr. Witt's performance was within the range of professionally competent assistance. Both Mr. Witt and the trial judge ensured that Petitioner Bing was familiar with the charges, the State's evidence against him, the State's ten-year plea offer and the possible sentences he faced if he proceeded to trial and was found guilty by the jury. Mr. Witt explained to the judge that Petitioner had never requested copies of discovery, but agreed to deliver copies of all documents to Petitioner. The trial judge confirmed that there were no remaining issues that Petitioner did not understand. Mr. Witt conferred with Petitioner and explained Petitioner's options to him.

The trial judge concluded that Petitioner had "a good lawyer," noting he had not "heard anything yet that would convince a reasonable person that you didn't have a good lawyer." Plea Tr. at 71-72. Mr. Witt conferred with Petitioner about the court's eight and a half year plea offer and highly recommended that Petitioner take the offer. The record reflects that Mr. Witt was prepared and ready to take the case to trial; however, Petitioner, in open court, acknowledged that he understood his options and chose to enter the plea offer for eight and a half years rather than proceed to trial. Petitioner knew that, if he proceeded to trial, he faced

29

an habitual felony offender sentence and a range of thirty to seventy-five years of incarceration.

After agreeing to accept the court's offer of eight and a half years, Petitioner affirmed that he was satisfied with Mr. Witt's representation. Id. at 77. Although a defendant's statements during the plea colloquy are not insurmountable, the Supreme Court held in Blackledge v. Allison, 431 U.S. 63, 73-74 (1977), that "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Here, based upon the record before this Court, Petitioner has not overcome this barrier.

Even assuming *arguendo* deficient performance by Mr. Witt, Petitioner has not shown that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.[8]  The State's case against Petitioner included a confidential informant witness, law enforcement witnesses (Investigator Ray Metrick, Officer John

---

[8] This Court need not address the prejudice prong since the performance prong has not been satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, . . . or vice versa." (citation omitted)), cert. denied, 531 U.S. 1017 (2000).

Blanchard, Investigator Ed Siefert, Russell Cherum and Katina Werner), a laboratory technician to identify the drugs and the introduction of the audiotapes, videotapes and Petitioner's confession.   The prosecutor stated that she was confident Petitioner would be convicted on all six counts.   If convicted at trial, he faced a term of incarceration for thirty to seventy-five years.   Additionally, the pleas of guilty resolved all three cases. Thus, if he had gone to trial on Case Nos. 2001-548-CF and 2001-694-CF, he would have faced a separate trial for Case No. 2002-254-CF (one count of felony driving while the license is suspended or revoked as an habitual traffic offender) and, if convicted, would have faced a possible consecutive sentence.

Mr. Witt highly recommended that Petitioner accept the court's offer of eight and a half years, which the prosecutor adamantly objected to since she had offered a ten-year plea based on his prior criminal record.   Petitioner understood the charges against him, the factual basis underlying those charges and the consequences of his entering the pleas.   Knowing the legal options available to him, he voluntarily chose to plead guilty.   Thus, Petitioner's ineffectiveness claim is without merit.

## B. Ground Two

Petitioner claims that the trial court erred by failing to conduct an inquiry into Petitioner's dissatisfaction and conflict with counsel or by failing to appoint new counsel, thus violating Petitioner's right to due process.  Specifically, Petitioner alleges:

> I told the court I was not satisfied with my counsel, and they [k]new it.  I ask[ed] for speedy trial seeking new counsel even appointed counsel[,] told the court my family would have new counsel by trial date.  The Judge threaten[ed] me with doing another nine months in county jail knowing I wanted new counsel, made me plea.

Amended Petition at 6.  Petitioner states that he raised this claim in his Rule 3.850 motion.  <u>Id</u>. at 7.

Assuming that Petitioner has exhausted this claim in state court, the claim is without merit.  The trial judge did not threaten Petitioner with another nine months in jail, but rather was explaining to Petitioner that, if he changed lawyers, he would experience a delay in the proceedings.  Mr. Witt confirmed that "[t]here isn't a lawyer in Lake City or anywhere that will take a case on Thursday afternoon that is going to trial on Monday."  Plea Tr. at 65, 70.  The trial judge merely wanted Petitioner to understand his options since Mr. Witt was prepared and ready to try the case that following Monday.  When Petitioner expressed his dissatisfaction with Mr. Witt, the trial judge inquired as to the reasons Petitioner was not satisfied with the representation.

32

After an extensive and detailed inquiry, the trial judge concluded that Mr. Witt was "a good lawyer," but that Petitioner could hire another attorney to either assist Mr. Witt or be lead counsel at the trial.  Id. at 70, 71, 77.

The trial judge was reluctant to dismiss Mr. Witt because Petitioner had not shown a defining reason for Mr. Witt's dismissal or that Mr. Witt represented conflicting interests.  Further, Petitioner's family had not yet hired another attorney, and the case was set for trial that following Monday.  Petitioner has not shown any error by the trial judge.  Quite to the contrary, the plea and sentencing proceeding reflects the trial judge's continual desire to ensure that Petitioner understood his situation and the options available to him.  After Petitioner consulted with Mr. Witt and chose to accept the court's plea offer of eight and a half years, over the State's objection, Petitioner affirmed that he was satisfied with Mr. Witt's representation.  The trial judge did not violate Petitioner's right to due process.

Thus, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition (Doc. #5) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of March, 2007.


TIMOTHY J. CORRIGAN
United States District Judge


sc 2/23
c:
Clyde Bing
Ass't Attorney General (David)